UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                          Case No. GG 18-02851-jtg

ROSE MARIE WANTZ,                               Chapter 7

      Debtor.                              Hon. John T. Gregg

_____/

**OPINION REGARDING OBJECTION TO**
**AMENDED SCHEDULE OF EXEMPTIONS**

APPEARANCES:    Roger G. Cotner, Esq., Cotner Law Offices, Grand Haven, Michigan for Rose Marie Wantz; Lisa Gocha, Esq., Chapter 7 Trustee, Hudsonville, Michigan

> *Deadlines may lead to unwelcome results,*
> *but they prompt parties to act and they*
> *produce finality.*[1]

After reopening her chapter 7 case, Rose Marie Wantz (the "Debtor") filed an amendment to her schedules in which she asserts that the proceeds of a personal injury tort claim not previously disclosed are exempt from property of her bankruptcy estate. Relying on Fed. R. Bankr. P. 1009(a), Lisa Gocha, the chapter 7 trustee (the "Trustee"), objects to the amendment because the Debtor failed to file it before the closing of her case. Moreover, the Trustee contends that the Debtor's neglect should not be deemed excusable under Fed. R. Bankr. P. 9006(b)(1).[2] For the following reasons, the court shall overrule the objection.[3]

---

[1]    *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992).

[2]    The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific sections of the Bankruptcy Code are identified herein as "section ___." The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq*. and are identified herein as "Rule ___." Citations to "[Dkt. No. ___]" are to entries on the docket in this case.

[3]    The following constitutes this court's findings of fact and conclusions of law pursuant to Rule 7052.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

## BACKGROUND

The facts are not in dispute.  In 2007, the Debtor had a medical device implanted within her body, after which she began to experience significant health issues.  Unbeknownst to the Debtor, the corrosive coils wrapped around the ends of the device were causing her both physical pain and mental anguish.[4]

Sometime in 2017, the Debtor, through her spouse, contacted attorneys who were representing numerous personal injury plaintiffs in civil litigation against the device manufacturer. In an email dated September 18, 2017, the personal injury attorneys informed the Debtor that they were "evaluating [her] case."  (Email, Ex. B at p. 1.)  They further explained that:

> We have not filed your . . . case to date.  The reason we have not filed your case yet is it is our understanding that you have not had a surgery to remove your Essure coils.  *From a legal standpoint, it will be very difficult to explain to a jury that your Essure coils are the cause of your injuries if you have not had them removed.*  Jurors may not understand how you can be injured by a product that you have not had removed.

(*Id*. (emphasis added).)

On June 27, 2018, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  The Debtor did not disclose any claim related to the device in her schedules. Four months after her bankruptcy case was filed, the Debtor received her discharge [Dkt. No. 28]. The Clerk entered a decree [Dkt. No. 30] closing the Debtor's no-asset case on November 30, 2018.

---

[4]     The device was later taken off the market.

Shortly before receiving her discharge, the Debtor executed a form "Attorney Employment Contract" with her personal injury attorneys. The Attorney Employment Contract provided that the personal injury attorneys would represent the Debtor in connection with "all causes of action and matters arising out of and resulting from use of the [device]" in exchange for a contingency fee of approximately 40% plus reimbursement of various costs and expenses. (Ret. Agr., Ex. C at p. 1 (emphasis added).) Somewhat inconsistently, the Attorney Employment Contract also stated that:

> Attorneys *will investigate [the Debtor's] potential claim* and in their sole discretion determine whether to bring a claim on [the Debtor's] behalf. [The Debtor] understands that Attorneys will not be able *to fully evaluate the potential claim* until [the Debtor] has provided enough evidence to prove the alleged harm, injuries, and/or damages. [The Debtor] also understands that it will take Attorneys a minimum of forty-five (45) days after receipt of such information *to evaluate [the Debtor's] potential claim*. [The Debtor] understands that [the Debtor's] claim is subject to a statutory time limit that may expire *during Attorneys' investigation*.

(*Id*. at p. 2 (emphasis added).)

In early 2020, the Debtor's personal injury attorneys sent the Debtor at least two emails. In the first email, they informed the Debtor that in addition to a previously submitted "Plaintiff Profile Form," she needed to meet with a "case assistant" to complete a questionnaire/fact sheet of some sort. (Email, Ex. D.) The email also warned the Debtor that the "[f]ailure to fully complete this fact sheet, which includes returning the signed Verification and four (4) authorizations, will result in the Court dismissing your case." (*Id*. (emphasis in original).)[5] The second email provided a similar if not identical reminder. (Email, Ex. E.)

In March 2021, the Debtor visited her personal physician who confirmed what the Debtor had begun to suspect — the device was the cause of her extreme lower back and pelvic discomfort,

---

[5]   It is unclear from the record when the personal injury attorneys commenced a formal civil action on behalf of the Debtor. The Debtor could not recall receiving any notice or other communications regarding the same.

fatigue, depression, and anxiety.  With her pain becoming more and more acute, the Debtor had the device removed later that year.  The medical procedure cost the Debtor over $7,000, plus four weeks away from work while she recovered.  (Invoices, Ex. 1.)

Around the same time that her physician confirmed that the device was the cause of her pain, the Debtor received from her personal injury attorneys an email regarding a "settlement packet" resolving the Debtor's claims against the device manufacturer.  (Email, Ex. F.)  The email attached a form document entitled "Confidential Release of All Claims," which the Debtor eventually executed.  (Release, Ex. G.)

On December 3, 2021, the Debtor's personal injury attorneys sent an email to the Debtor's counsel in this case that stated the following:

> Mr. Cotner – we are reaching out to you regarding the bankruptcy noted above where you were the Ch. 7 Trustee.  The Debtor is Rose Marie Wantz. It does not appear that the personal injury lawsuit was included in the Schedule of Assets.
>
> 12/3/2021, 12:26 PM
>
> Bankruptcy Date:  06/27/2018
> Standard Discharge: 11/14/2018
> Litigation:  permanent birth control device – Essure
> Implant Date: 10/2007
> Removal Date: 08/30/2021
> Contract date: 10/28/2018
> Gross award: please contact @Andrea McGinnis for details
>
> We'd like to know whether the personal injury claim is part of the bankruptcy estate.  And if so, how you would like to proceed.

(Email, Ex. I.)[6]

---

[6]    The email incorrectly refers to Mr. Cotner as the chapter 7 trustee.  Mr. Cotner was and remains counsel for the Debtor.

Approximately three weeks after the email, the Debtor filed an *ex parte* motion to reopen her case [Dkt. No. 31] so that she could "file amended schedules to add the omitted and anticipated personal injury recovery." (Mot. to Reopen at ¶ 6.) Upon review of the motion to reopen, the court scheduled it for hearing [Dkt. No. 36] to provide an opportunity for parties in interest to object to the relief requested. When no objections to the motion to reopen were timely filed, the court dispensed with the need for a hearing and entered an order [Dkt. No. 41] reopening the Debtor's case.

On the same day her case was reopened, the Debtor filed amended schedule A/B and amended schedule C [Dkt. No. 42] (collectively, the "Amendment"). The Amendment disclosed that the Debtor held the personal injury tort claim against the device manufacturer, which the Debtor sought to exempt under section 522(d)(11)(D).[7] Promptly upon reappointment [Dkt. Nos. 44, 45], the Trustee withdrew her report of no distribution [Dkt. No. 47] and timely filed an objection to the Amendment [Dkt. No. 48] (the "Objection").

After holding a preliminary hearing, the court entered an order scheduling the Objection for an evidentiary hearing [Dkt. No. 52]. Leading up to the evidentiary hearing, the parties filed briefs in support of their respective arguments [Dkt. Nos. 60, 63], a stipulation to admit documents into evidence [Dkt. No. 54], and a stipulation of facts [Dkt. No. 64]. The Debtor was the only witness called to testify during the evidentiary hearing. At the conclusion of the hearing, the court took the matter under advisement.

---

[7]     In June 2022, the Debtor received a "Litigation Closing Statement" from her personal injury attorneys revealing that the Debtor's claim against the device manufacturer had been settled for $30,000, the net result of which amounted to slightly more than $6,500 for the Debtor. (Statement, Ex. H.)

**ISSUES**

The parties have raised the following issues:

(i)     whether the Debtor may, notwithstanding Rule 1009(a), file an amendment to her schedule of exemptions as a matter of course after the closing and subsequent reopening of her case; and

(ii)    in the event that the Debtor does not have such right, whether the Debtor has demonstrated "excusable neglect" under Rule 9006(b)(1) so as to permit her to file an otherwise untimely amendment.[8]

**DISCUSSION**

Upon the filing of any bankruptcy case, an estate is created by operation of law. 11 U.S.C. § 541(a).  Subject to certain exceptions, section 541 provides that the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).[9]  However, an individual debtor may assert that property is exempt, meaning that the value of such property (or, in some instances, the property itself) is excluded from property of the estate.  11 U.S.C. § 522(b)(1); Fed. R. Bankr. P. 4003(a); *see Schwab v. Reilly*, 560 U.S. 770, 775-76 (2010) (citations omitted).

In this case, the Debtor filed her voluntary petition, thereby creating an estate comprised of, among other things, her personal injury tort claim against the device manufacturer.  *See, e.g.*, *Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462 (6th Cir. 2013) (citations omitted).  Because the claim was not included on the Debtor's schedules or otherwise disclosed, it was unknown to the Trustee and other parties in interest.  With a report of no distribution filed and a discharge

---

[8]     This court's decision should not be construed to limit post-closing relief to that available under Rule 9006(b)(1).  *See, e.g.*, *Mayor and City Council of Baltimore, Maryland v. State of West Virginia (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 528-29 (6th Cir. 2002) (distinguishing request to enlarge time under Rule 9006(b)(1) from doctrine of substantial compliance).

[9]     A debtor has a duty to disclose all assets, including causes of action.  11 U.S.C. § 521(a).

6

entered, the Debtor's case was finalized upon its closing. *See* 11 U.S.C. § 350(a). Or so it was thought.

Upon receiving news of the settlement from her attorneys, the Debtor sought to reopen her case. Section 350 provides that a previously closed case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "It is well settled that decisions as to whether to reopen bankruptcy cases and allow amendment of schedules are committed to the sound discretion" of the bankruptcy court. *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 540-41 (6th Cir. 1985); *cf. Kavanagh v. Kayes (In re Fair Creamery Co.)*, 193 F.2d 5, 6 (6th Cir. 1951) (distinguishing request to reopen from request for relief after reopening under Bankruptcy Act).

This court previously concluded that cause existed to reopen the Debtor's case so as to allow the Trustee to administer the personal injury tort claim subject to any exemption asserted by the Debtor. During the evidentiary hearing, the Trustee, to her credit, acknowledged that the Debtor's newly-asserted exemption substantively satisfied section 522(d)(11)(D). As such, only the timing of the Amendment is in dispute.

## A.    *No Right to Amend Schedules As a Matter of Course After the Closing of a Case*

In her Objection and supporting brief, the Trustee focuses on the text of Rule 1009(a). She urges this court to hold that once a case is closed, Rule 1009(a) precludes an amendment unless a debtor demonstrates that the time should be enlarged under Rule 9006(b)(1).

Quoting at length from *Law v. Siegel*, 571 U.S. 415 (2014), the Debtor argues that the interpretation of Rule 1009(a) advanced by the Trustee improperly interferes with the Debtor's statutory right to amend her schedule of exemptions at any time. The Debtor seizes on the following language:

[Section] 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt. See § 522(b), (d). [The trustee] insists that because § 522(b) says that the debtor "may exempt" certain property, rather than that he "*shall* be entitled" to do so, the court retains discretion to grant or deny exemptions even when the statutory criteria are met. But the subject of "may exempt" in § 522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion. A debtor need not invoke an exemption to which the statute entitles him; but if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so.

\* \* \* \* \*

[The trustee] points out that a handful of courts have claimed authority to disallow an exemption (or to bar a debtor from amending his schedules to claim an exemption, which is much the same thing) based on the debtor's fraudulent concealment of the asset alleged to be exempt.

*Law*, 571 U.S. at 424-25 (emphasis in original) (citations omitted).

The Debtor thus contends that *Law* essentially renders her ability to claim exemptions untouchable, including from a procedural perspective. The court disagrees. Although *Law* was certainly an impactful decision, the Debtor attempts to expand it too far. In *Law*, the Supreme Court focused on section 522 by noting "a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct." *Id*. at 424. Adhering to the text of section 522(k), the Court rejected the "view that equitable considerations permit a bankruptcy court to contravene the express provisions of the Code." *Id*. at 426. The Court ultimately held that a bankruptcy court may not, including through equitable means, surcharge property that would otherwise be exempt under the Bankruptcy Code due to a debtor's bad-faith conduct. *Id*. at 427-28.

Despite its broad language at times, *Law* is a decision involving, at its core, section 522 and the ability of a bankruptcy court to stray from a statute through the use of section 105(a) and/or

8

its equitable powers.  *Law* did not consider whether amendments are subject to a temporal limitation of a procedural nature after a case is closed.  Rather the Bankruptcy Code, including section 522, is silent with respect to the time in which a debtor may file an amendment to the schedule of exemptions.

In the absence of any statutory directive, Congress delegated to the Supreme Court the authority to "prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under [the Bankruptcy Code]."  28 U.S.C. § 2075; *see also* S. Rep. No. 95-989, at 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835 (Federal Rules of Bankruptcy Procedure "will prescribe the procedure by which a case is reopened and how it will be conducted after reopening."); *accord Kontrick v. Ryan*, 540 U.S. 443, 448 (2004) (recognizing controlling nature of Federal Rules of Bankruptcy Procedure where no statute provides time limit for filing complaint to object to discharge).

Proposed by the Judicial Conference Advisory Committee on Bankruptcy Rules, adopted by the Supreme Court in 1983, effective on December 1 of that same year after transmittal to Congress, and entitled "Amendments of Voluntary Petitions, Lists, Schedules and Statements," Rule 1009 applies to amendments to a debtor's schedules by providing that:

> (a)      General Right to Amend.  A . . . schedule . . . may be amended by the debtor *as a matter of course at any time before the case is closed*.  The debtor shall give notice of the amendment to the trustee and to any entity affected thereby.

Fed. R. Bankr. P. 1009(a) (emphasis added).

Rule 9006 was similarly adopted, implemented, and effective in 1983.  It is entitled "Computing and Extending Time; Time for Motion Papers" and provides, in pertinent part:

> (1)      In General.  Except as provided in paragraphs (2) and (3) of this subdivision, *when an act is required or allowed to be done at or within a specified period by these rules* or by a notice given thereunder or by order

of court, *the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

(2)    Enlargement Not Permitted.  The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024.

(3)    Enlargement Governed by Other Rules.  The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, only to the extent and under the conditions stated in those rules. In addition, the court may enlarge the time to file the statement required under Rule 1007(b)(7), and to file schedules and statements in a small business case under § 1116(3) of the Code, only to the extent and under the conditions stated in Rule 1007(c).

Fed. R. Bankr. P. 9006(b) (emphasis added).  According to the Advisory Committee Notes, Rule 9006(b) was "patterned" after Fed. R. Civ. P. 6(b) and Fed. R. App. P. 26(b).  *See* Fed. R. Bankr. P. 9006 advisory committee's note to 1983 adoption.

While neither the Supreme Court[10] nor the Sixth Circuit Court of Appeals[11] has determined whether an amendment to the schedule of exemptions after the closing of a bankruptcy case is subject to Rule 1009(a), numerous lower courts have addressed the issue without consensus.

---

[10]    The Supreme Court has twice acknowledged the procedural utility of Rule 4003(b), a largely temporal rule governing exemptions.  In *Taylor*, the Court instructively drew a negative inference from Rule 4003(b) to conclude that parties in interest cannot file an objection to a debtor's schedule of exemptions after the thirty-day deadline established by the rule in the absence of an extension granted by the bankruptcy court.  503 U.S. at 643.  And in *Schwab*, both the majority and the dissent carefully preserved the efficacy of Rule 4003(b), including its thirty-day deadline. 560 U.S. at 783 n.8; *id.* at 800 (Ginsburg, J., dissenting).

[11]    The Sixth Circuit took note of, but never decided, the issue in *Ellman v. Baker (In re Baker)*, 791 F.3d 677, 682-83 (6th Cir. 2015).  In *Baker*, the Sixth Circuit applied principles from *Law* to hold that a court may not disallow amended exemptions due to alleged bad faith or misconduct of the debtor even in a case that has been reopened.  *Id.* (citing *Law*, 571 U.S. at 415).  The Sixth Circuit declined, however, to determine whether Rule 1009 precludes a debtor from amending his or her exemptions after a case is closed because the issue was raised for the first time on appeal.  *Id*. at 693; *cf. Westry v. Lim (In re Westry)*, 591 Fed. App'x 429, 432 (6th Cir. 2014) (bankruptcy court exceeded its authority after *Law* when it disallowed on timeliness grounds amendment to schedule of exemptions before closing of case) (unpublished).  It did recognize, in *dicta*, that an objection to an exemption on timeliness grounds under Rule 1009(a) "is analytically different" from a bad faith objection.  *In re Baker*, 791 F.3d at 684.

*Compare, e.g.*, *In re Bartlett*, 326 B.R. 436 (Bankr. N.D. Ind. 2005) (amendments are *per se* prohibited in reopened cases) *with, e.g.*, *Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386 (B.A.P. 9th Cir. 2003) (amendments are always permitted in reopened cases) *with, e.g.*, *In re Sievert*, 634 B.R. 1030 (Bankr. W.D. Wisc. 2021) (excusable neglect standard under Rule 9006(b)(1) determines if amendment permitted in reopened case).

Upon careful consideration, this court finds the text of Rule 1009(a) to be clear and unambiguous. *See, e.g.*, *In re Awan*, 2017 WL 4179816, at *3 (Bankr. C.D. Ill. Sept. 20, 2017); *cf. Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.* 498 U.S. 533, 540-41 (1991) (citation omitted) (plain meaning applied when interpreting Federal Rules of Civil Procedure). It provides that a schedule may be amended as a matter of course at any time *before* the case is closed. Conversely through negative inference, it also provides that a schedule may not be amended as a matter of course at any time *after* the case is closed. *Cf. Taylor*, 503 U.S. at 643 (applying negative inference to procedural rule concerning exemptions). In the event that this court construed Rule 1009(a) to permit an amendment as a matter of course after the closing of a case (including upon reopening), the phrase "at any time before the case is closed" would be rendered meaningless. *See, e.g.*, *In re Awan*, 2017 WL 4179816, at *3. This court therefore holds that a debtor loses the right to amend his or her schedules as a matter of course after a case is closed.[12]

From a policy perspective, such holding brings much needed finality to any bankruptcy case:

> This interpretation is logical; when cases are ready for closure the estates will have been fully administered, all claims will have been dealt with, and

---

[12] This court's interpretation is consistent with the drafter's intentions. According to the Advisory Committee Notes, Rule 1009 is "particularly important with respect to any amendment of the schedule of property affecting the debtor's claim of exemptions." Fed. R. Bankr. P. 1009 advisory committee's note to 1983 adoption. While far from controlling, the Advisory Committee Notes support the view that Rule 1009(a) is designed to provide a temporal check on a debtor's otherwise liberal right to amend.

11

> debtors will be in a position to obtain their "fresh start."  All bankruptcy schedules and statements should be in their final form at that time.

*In re Smith*, 2014 WL 7358808, at *4 (Bankr. D.N.M. Dec. 24, 2014).

In the context of exemptions, this court's interpretation strikes the appropriate procedural balance between the interests of the debtor and the interests of the estate and its creditors.  On the one hand, it incentivizes a debtor to comply with his or her duties during the pendency of the case.  *See* 11 U.S.C. § 521(a); *accord Stanley v. FCA US, LLC*, 51 F.4th 215, 222 (6th Cir. 2022) ("A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run. . .") (internal citation and quotation omitted).  On the other hand, a debtor is by no means unfairly prejudiced because the debtor almost always controls the disclosure.  *See In re McCowan*, 2018 WL 4078613, at *3 (Bankr. E.D.N.C. Aug. 22, 2018).  And where disclosure is beyond a debtor's control, a debtor may request that the court, in the role of procedural gatekeeper, authorize the filing of what would otherwise be an untimely amendment based on the facts and circumstances in a particular case.

Not surprisingly, the Debtor urges this court to adopt a much different interpretation of Rule 1009(a).  She relies on a recent decision from the Bankruptcy Appellate Panel for the Tenth Circuit to argue that a debtor has a right to amend as a matter of course, regardless of whether the case is open or reopened.  *See Mendoza v. Montoya (In re Mendoza)*, 595 B.R. 849 (B.A.P. 10th Cir. 2019) (consolidated appeal).  In *Mendoza*, the court reasoned that Rule 1009(a) does not include a "specific period" as required under Rule 9006(b)(1) because "[u]ntil the case is closed, it is impossible to determine the date of the case closing, suggesting Rule 1009 references an indeterminate timeframe." *Id*. at 856 (citation omitted).  Given the lack of any "specific period," the *Mendoza* court concluded that Rule 9006(b)(1) is inapplicable to Rule 1009(a).  *Id.*  Somewhat relatedly, the court also suggested that Rule 1009(a) does not limit amendments to the time period

"prior to the first closing of the case."  *Id*.  Rather, according to *Mendoza*, an amendment may be filed as a matter of course in a previously closed but subsequently reopened case.  *Id*.

This court must respectfully decline to follow *Mendoza*.[13]  Again, the text of Rule 1009(a) is clear and unambiguous – the right to amend as a matter of course ends upon the closing of a case.  If this court were to adopt *Mendoza's* interpretation, it would effectively be rewriting the rule to remove a material portion of it.  *Contra TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted) (court should not adopt construction that would render language insignificant or superfluous).  Rule 1009(a) instead works together with Rule 9006(b)(1) to provide that where "an act is required or allowed to be done" (*e.g.*, an amendment is allowed to be filed as a matter of course) "at or within a specified period" (*e.g.*, before the closing of the case) "by these rules" (*e.g.*, Rule 1009(a)), the time for performing the act may be enlarged.

Moreover, contrary to what *Mendoza* seems to suggest, Rule 9006(b)(1) is not limited to the enlargement of time measured in incremental durations such as days and hours.  Instead, "[t]he time-computation and time-extension provisions of Rule 9006, like those of Federal Rule of Civil Procedure 6, *are generally applicable to any time requirement* found elsewhere in the rules, unless expressly excepted."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 n.4 (1993) (emphasis added); *see In re Benjamin*, 580 B.R. 115, 119 (Bankr. D.N.J. 2018); *see also* Fed. R. Bankr. 1001.  Because Rule 1009 is not one of the exceptions enumerated in Rule 9006(b)(2) and (3), Rule 9006(b)(1) applies to the time period set forth in Rule 1009(a).[14]

---

[13]     This court finds more persuasive the thorough analysis from one of the bankruptcy courts below.  *See In re Dollman*, 583 B.R. 268 (Bankr. D.N.M. 2017), *rev'd sub nom. In re Mendoza*, 595 B.R. at 849.

[14]     The *Mendoza* court also concluded that by reading Rule 1009(a) and Rule 9006(b)(1) together, the bankruptcy courts below improperly shifted the burden of proof by making the debtors demonstrate the exemption is properly claimed.  *Id*. at 857.  This court disagrees.  Rule 9006(b)(1), like Fed. R. Civ. P. 6, is a rule of procedure.  *In re Benjamin*, 580 B.R. at 118 (citation and quotation omitted); *see also Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941).  In the event that a debtor satisfies its procedural burden under Rule 9006(b)(1), the objecting party bears the burden to prove that the exemption is not properly claimed pursuant to Rule 4003(c).

In this case, the relevant time period began on the petition date and ended on November 30, 2018, the date on which the case was closed.  The Debtor could have amended her schedules to include her personal injury tort claim at any time before her case closed.  She did not do so. Upon closing, the Debtor lost her procedural right to amend as a matter of course, meaning that she must now obtain relief from this court in order to file the Amendment.

**B.     *Enlarging the Time to Amend Schedules After the Closing of a Case***

Rule 9006(b)(1) allows a court "for cause shown" to enlarge the time to file an amendment "on a motion made after" the closing of the case where the failure to do so before the closing of the case "was the result of excusable neglect."  Fed. R. Bankr. P. 9006(b)(1); *see* Fed. R. Bankr. P. 1009(a).[15]  The party requesting enlargement — in this case, the Debtor — bears the burden of demonstrating that her neglect was in fact excusable.  *See In re Tesch*, 628 B.R. 60, 69 n.15 (Bankr. W.D. Mich. 2021) (citation omitted); *supra* at n.13.

In *Pioneer*, the Supreme Court addressed the contours of "excusable neglect" under Rule 9006(b)(1). 507 U.S. at 395-96.  By using that term, the Court observed, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  *Id.* at 388.  Emphasizing the "elastic" nature of the inquiry in the context of an untimely proof of claim, the Court explained:

> Because Congress has provided no other guideposts for determining what sort of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice to the debtor, the length of delay, and its potential impact on judicial proceedings, the reason for the delay, including whether

---

[15]     The Debtor did not file a "motion" seeking to enlarge the time as required under Rule 9006(b)(1).  However, because the Trustee raised the issue of excusable neglect in the Objection, the court shall treat the Debtor's technical oversight as a harmless error.

> it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id*. at 392, 395.

In this case, the Debtor clearly neglected to timely disclose her personal injury tort claim within the generous time frame established by Rule 1009(a). This court must therefore determine whether such neglect was in fact excusable. The court's analysis is not confined to factor counting, however. Instead, the court must weigh the non-exclusive *Pioneer* factors based on the facts and circumstances in this case.

With respect to the danger of prejudice to the other party, the court finds that the Debtor's failure was prejudicial to the Trustee, the estate and its creditors. By failing to timely disclose her claim, the Debtor technically deprived the Trustee of the opportunity to administer property of the estate by selecting counsel, participating in the litigation, and making decisions related thereto. However, for two reasons, any prejudice to the Trustee, the estate and its creditors is not as consequential as the Trustee contends.

First, it is important to keep in mind that the Debtor's exemption under section 522(d)(11)(D) was unused at the time her case was closed. The Debtor could have asserted an exemption in the personal injury tort claim and the proceeds thereof at any point while her case was open. The court finds this to be one of the most important facts and shall weigh it accordingly.

Second, the Trustee contends that the results would have been different if she had been involved in the litigation. Yet nothing in the record even remotely indicates that the Trustee could have settled the Debtor's claim against the device manufacturer for an amount sufficient to ensure a distribution to creditors holding allowed claims against the estate. Relatedly, nothing in the record allows this court to even infer that any similarly situated claimants succeeded in obtaining settlements on terms more favorable than the settlement negotiated for the Debtor by her personal

injury attorneys. While the court recognizes that the Trustee was technically deprived of the ability to administer the claim, the consequences of any prejudice are minimal based on the facts and circumstances of this case.

With respect to the length of the delay, the court agrees with the Trustee that the amount of time between the petition date and the date on which the motion to reopen was filed (a period of three years) is significant. Nonetheless, the length of the delay is tempered by the reasons for the delay. According to the Debtor, she was unaware that the device was causing her pain until she met with her physician. She testified to this fact repeatedly during the evidentiary hearing and nothing in the record controverted that testimony. The Debtor was also under the impression that her personal injury attorneys were merely investigating whether she had recourse against the device manufacturer when she executed the Attorney Employment Agreement. Indeed, the Attorney Employment Contract referred to an "investigation," a "potential claim," and the need for the personal injury attorneys to "evaluate" her situation. Moreover, the Debtor had no reason to believe that a case had actually been commenced on her behalf until at least January 2020 when her personal injury attorneys made passing reference to a case in an email.

Importantly, the court must emphasize that the Debtor exhibited a lack of sophistication and appeared confused with respect to legal claims, a point that was reinforced when the Debtor testified that she had no medical or legal training whatsoever. To compound her confusion, the Debtor was initially informed by her personal injury attorneys in September 2017 that "from a legal standpoint, it will be very difficult to explain to a jury that your Essure coils are the cause of your injuries if you have not had them removed." It is therefore not hard to understand why the Debtor was unaware that she held a claim until a settlement was procured on her behalf (but without her direct involvement). In sum, the Debtor's health issues, the causes thereof, and the

16

Debtor's lack of sophistication with respect to legal and medical matters, distinguish the reasons for the delay in this case from those commonly associated with the failure to timely disclose assets in other cases.

With respect to whether the Debtor acted in good faith, the court easily concludes that she did. Nothing admitted into evidence controverted the sincere, emotional and credible testimony of the Debtor. The court is also mindful of the fact that the Debtor took reasonably prompt action to disclose the claim and the proceeds thereof upon learning of the settlement. She proactively sought to reopen her case so that she could file the Amendment. Presumably, she could have remained silent. Instead, she complied with her duty as a debtor in bankruptcy. The court will not conflate confusion regarding the existence of a claim with a lack of good faith.

As an additional factor, the court cannot overlook relationship between the Debtor and her personal injury attorneys. As a general rule, the knowledge of an attorney is imputed to the client, a principle that this court frequently applies. However, the relationship between a personal injury attorney and a claimant is somewhat removed, as exemplified by this case. The Debtor's personal injury attorneys from Texas were representing numerous similarly situated claimants from across the country in litigation pending in California. The relationship between the Debtor and her personal injury attorneys was inherently commercial in nature, as illustrated by the Attorney Employment Contract and other documents sent by the personal injury attorneys to the Debtor, all of which were form-based. The personal injury attorneys extracted large contingency fees, including from the Debtor, to compensate for the economic risks of their representations. That is the nature of their business, and the court will not criticize it. The court will, however, note that the Debtor received a minimal level of communication from her personal injury attorneys that further explains why the Debtor failed to timely disclose and exempt her claim.

One final observation.   When all is said and done, the Debtor has post-discharge medical bills of over $7,000, an amount exceeding the net settlement proceeds.  The Debtor has experienced pain and suffering in the most intimate part of her body through no fault of her own.  From a policy perspective, the court overwhelmingly concludes that Debtor should be allowed to exempt her claim and the proceeds thereof.

## **CONCLUSION**

Because the Debtor did not amend her schedules before the closing of her case, she forfeited the right to do so as a matter of course pursuant to Rule 1009(a).  However, based on the facts and circumstances in this case, the Debtor's neglect was excusable under Rule 9006(b)(1).  The court shall therefore enlarge the time for the Debtor to file what would otherwise be an untimely Amendment.

For the foregoing reasons, the Objection is overruled.  The court shall enter a separate order consistent with this Opinion.

**Signed: January 5, 2023**




John T. Gregg
United States Bankruptcy Judge